UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBORRAH D. BARBEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:06CV1716 TIA |
| ) | |
| CENTRAL PARKING SYSTEMS, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment.  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

### **Facts**

Defendant Central Parking Systems, Inc. ("CPS") employed Plaintiff Deborrah Barbee from June, 1999 through September, 2004.  (Pl. Depo., Def. Exh. A, p. 79) During Plaintiff's employment, she held positions as a booth attendant, a money counter/revenue auditor, and a ticket auditor/customer service representative.  (Pl. Depo., Def. Exh. A, pp. 82-83) In 2003, Plaintiff regularly began arriving late to work.  (Levora Decl., Def. Exh. B, ¶ 3) On October 17, 2003, Plaintiff's supervisor, Theresa Levora, issued a verbal warning regarding Plaintiff's excessive tardiness, during which time Ms. Levora stressed that Plaintiff's start time was 8:30 a.m. and that Plaintiff could not make her own hours.  (Pl. Depo., Pl. Exh. 1, p. 89; Levora Decl., Def. Exh. B, ¶ 8; 10/17/03 Memorandum, Def. Exh. C)

On January 9, 2004, Plaintiff received a written performance appraisal indicating that tardiness was an area in which Plaintiff needed improvement.  (Pl. Depo., Pl. Exh. 1, pp. 102-103; 1/9/04 Review, Def. Exh. E) Following the receipt of the January 9, 2004 review, Plaintiff was tardy on the

next three scheduled work days. (Levora Decl., Def. Exh. B, ¶ 10; Attendance Chart, Def. Exh. D) On January 14, 2004, Ms. Levora gave Plaintiff a verbal warning regarding Plaintiff's tardiness and drafted a memorandum indicating that Plaintiff continued to arrive anywhere from 10 minutes to one hour late. (Pl. Depo., Pl. Exh. 1, p. 106; Levora Decl., Def. Exh. B, ¶ 11; 1/14/04 Verbal Warning, Def. Exh. G) Ms. Levora further warned that Plaintiff would receive a written warning and/or suspension the next time she was tardy. (Pl. Depo., Pl. Exh. 1, pp. 106-107; Levora Decl., Def. Exh. B, ¶ 11; 1/14/04 Verbal Warning, Def. Exh. G) Plaintiff explained to Ms. Levora that she was tardy because pain kept her up at night. (Pl. Depo., Pl. Exh. 1, p. 107)

After January 14, 2004, Plaintiff continued to arrive late for work. (Levora Decl., Def. Exh. B, ¶ 12; Attendance Chart, Def. Exh. D) Between January 14, 2004 and July 16, 2004, Plaintiff received numerous verbal warnings regarding her tardiness from Ms. Levora. (Levora Decl., Def. Exh. B, ¶ 12) Plaintiff attributed her tardiness primarily to physical problems which caused an inability to sleep at night and a propensity to oversleep in the morning. (Pl. Depo., Pl. Exh. 1, pp. 110-111) During the 8-week-period prior to July 16, 2004, Plaintiff was tardy every day. (Levora Decl., Def. Exh. B, ¶ 13; Attendance Chart, Def. Exh. D; 7/16/04 Employee Warning Report, Def. Exh. H) On July 16, 2004, Plaintiff called in late, after which she received an Employee Warning Report. The Report indicated that Defendant repeatedly warned Plaintiff about her tardiness and that future abuses of Defendant's attendance policy would not be tolerated. (Report, Def. Exh. H)

Between July 16, 2004 and August 20, 2004, Plaintiff was late for work thirteen times. (Levora Decl., Def. Exh. B ¶ 14; Attendance Chart, Def. Exh. D) As a result, on August 20, 2004, Defendant suspended Plaintiff for three days and placed her on a 60-day Performance Improvement Plan when she returned to work. (Pl. Depo., Def. Exh. A, pp. 127-129; 8/20/04 3-Day Suspension

Memorandum, Def. Exh. I; Performance Improvement Plan, Def. Exh. J) The Performance Improvement Plan noted Plaintiff's consistent issue with tardiness and the Defendant's accommodation in providing Plaintiff with a 9:00 a.m. start time effective September 3, 2004. (Performance Improvement Plan, Def. Exh. J) Defendant also changed Plaintiff's responsibilities and her work hours. (Id.) The Plan concluded by stating that if, at the end of the 60-day period, Plaintiff was unable to fulfill the position objectives, the Defendant would consider further action, including termination. (Id.)

Plaintiff was tardy on August 30, 2004. (Levora Decl., Def. Exh. B ¶ 19; Attendance Chart, Def. Exh. D) She arrived late again on September 29, 2004 and failed to clock in at all. (9/29/04 Employee Warning Report, Def. Exh. K) On that same date, Defendant terminated Plaintiff's employment citing tardiness as the reason. (Levora Decl., Def. Exh. B ¶ 20; 9/29/04 Report, Def. Exh. K)

On March 25, 2005, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), alleging discrimination based on race, sex, age, and disability. (Right to Sue Letter, Complaint Exh. 1) The EEOC issued a Dismissal and Notice of Rights on August 29, 2006. On November 28, 2006, Plaintiff filed a *pro se* Complaint in federal court, along with a motion for appointment of counsel. This Court appointed counsel to aid Plaintiff in her claims against Defendant Central Parking Systems, and counsel filed a First Amended Complaint on June 29, 2007.[1]

In her Complaint, Plaintiff alleges that the Defendant discriminated against her on the basis

---

[1] The Court appreciates the outstanding effort that appointed counsel displayed in this case.

of race, disability, and age. Plaintiff is an African-American female over the age of forty with carpal tunnel syndrome. Specifically, Plaintiff claims that Defendant discriminated against her on the basis of race and age by allowing younger, white employees to take a full hour for lunch and by taking no disciplinary action against younger, which employees who were tardy. Plaintiff also asserts that, under the Americans with Disability Act ("ADA"), she is a qualified individual with a disability who could perform the essential functions of her job with or without reasonable accommodation. Plaintiff contends that Defendant failed to reasonably accommodate her disability after she requested such accommodation and that Defendant discharged Plaintiff from her employment because of this disability in violation of the ADA.

On April 30, 2008, Defendant filed a Motion for Summary Judgment, asserting that Plaintiff is unable to demonstrate a prima facie case of discrimination and that Defendant is therefore entitled to judgment as a matter of law. Further, Defendant contends that Plaintiff failed to exhaust administrative remedies with respect to her claim that Defendant failed to accommodate her in violation of the ADA. Plaintiff responds that she can demonstrate a prima facie case of race, age, and disability discrimination, such that summary judgment is not warranted. Further Plaintiff argues that she mentioned Defendant's alleged failure to accommodate in an EEOC document and that the accommodation charge is reasonably related to her EEOC charge such that the claim is not barred for failure to exhaust administrative remedies.

## **Standard for Ruling on Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

In the context of employment discrimination cases, the Eighth Circuit Court of Appeals has cautioned that courts should seldom grant summary judgment because such actions are inherently fact-based. Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998). Thus, "[s]ummary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable

inferences sustaining the position of the nonmoving party." Id.

**Discussion**

**Discrimination under the Americans with Disabilities Act**

Defendant asserts that summary judgment against the Plaintiff is proper in this case because Plaintiff is unable to establish a prima facie case of discrimination under the ADA. Further, Defendant maintains that Plaintiff failed to exhaust her administrative remedies with respect to her failure to accommodate claim, thus barring her from raising that claim. Plaintiff, on the other hand, contends that she can demonstrate a prima facie case of discrimination under both the theory of unlawful disability discrimination and failure to accommodate. Plaintiff acknowledges that she did not specifically claim "failure to reasonably accommodate" in her EEOC charge; however, she asserts that she notified the EEOC that Defendant failed to provide reasonable accommodations during the EEOC investigation. (Pl. Exh. 22)

The Americans with Disabilities Act ("ADA") provides protection from discrimination to any "qualified individual with a disability." Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003) (quoting 42 U.S.C. § 12112(a)). To evaluate claims under the ADA, courts use the burden-shifting formula set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). To establish a prima facie case of disability discrimination, Plaintiff must demonstrate that (1) she has a disability within meaning of the ADA; (2) she is qualified to perform the essential functions of her job, either with or without reasonable accommodation; and (3) she suffered an adverse employment action based on her disability. Id. (citation omitted).

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a

legitimate, nondiscriminatory reason for dismissing the plaintiff. Finally, the burden shifts back to the plaintiff to show that defendant's reason is pretextual and that intentional discrimination was the true reason for plaintiff's termination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-507 (1993). However, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. at 507 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Defendant maintains that summary judgment is proper in this case because Plaintiff is unable to show that she has a disability or that she is qualified to perform the essential functions of her job. Plaintiff, however, asserts that she can establish a prima facie case of disability discrimination sufficient to overcome Defendant's Motion for Summary Judgment.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The regulations define "substantially limiting" as an impairment that "renders an individual unable to perform a major life activity which the average person in the general population can perform, or . . . significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population." Philip, 328 F.3d at 1023 (citing 29 C.F.R. §1630.2(j)(1)(i)-(ii)). In addition, major life activities include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Courts consider the following factors when determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of that impairment; and (3) the permanent or long-term impact, or the expected impact resulting from

the impairment. 29 C.F.R. § 1630.2 (j)(2).

Plaintiff contends that she is substantially limited in the major life activities of performing repetitive, manual tasks with her hands, arms, and wrist due to carpal tunnel syndrome. (Complaint, ¶¶ 13-15) Thus, Plaintiff asserts that she can demonstrate that she is disabled under the statute. Defendant, on the other hand, maintains that Plaintiff has failed to present any evidence showing that she is unable to perform any major life activity that an average person in the general population can perform or that her ability to perform any major life activity is severely restricted compared to the general population. The undersigned agrees that Plaintiff is unable to show that she is disabled within the meaning of the ADA.

"To be substantially limited in the life activity of performing manual tasks a plaintiff 'must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'" Philip, 328 F.3d at 1024 (quoting Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002)). Further, in order to prove that he or she is disabled, a plaintiff "must submit more than just evidence of a medical diagnosis of an impairment." Philip, 328 F.3d at 1024. Instead, "the relevant inquiry when addressing the major life activity of performing manual tasks is 'whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job.'" Id. at 1025 (quoting Williams, 534 U.S. at 200-201). This type of evidence includes one's ability to perform household chores, bathe, brush teeth, prepare meals, do laundry, and so on. Id. (citation omitted).

In the instant case, Plaintiff has failed to demonstrate that she is unable to perform tasks central to most people's daily lives. In support of her disability claim, Plaintiff has only submitted an

unverified "letter" from a Dr. Lisa Armbruster. "There are limits on what kinds of evidence a judge may consider in reviewing a motion for summary judgment, and inadmissible evidence obtained during discovery cannot be used to defeat such a motion." Shaver v. Indep. Stave Co., 350 F.3d 716, 723 (8th Cir. 2003). The undersigned will not consider this evidence because the letter is not verified or otherwise made under oath. See James v. Mecom, Ltd., No. 1:04CV102 CDP, 2006 WL 2990342, at *3 (E.D. Mo. Oct. 18, 2006) (disregarding medical report submitted in opposition to summary judgment based, in part, on lack of evidentiary foundation). Plaintiff cannot provide an evidentiary foundation because she did not have personal knowledge of the matters contained in the report, as required by Rule 602 of the Federal Rules of Evidence. Id. See also Shaver, 350 F.3d at 723.

Further, as Defendant indicates in its Reply, Plaintiff did not disclose her treatment with Dr. Armbruster during discovery. "When a party fails to disclose information as required by Rule 26(a), which includes discovery obtained by interrogatories and requests for admissions, the evidence shall be inadmissible at trial." James v. Mecom, Ltd., No. 1:04CV102 CDP, 2006 WL 2990342, at *3 (E.D. Mo. Oct. 18, 2006) (citing Fed. R. Civ. P. 37(c)(1)). The failure to timely disclose is tantamount to a failure to disclose. Id. The discovery completion deadline was March 31, 2008. (Second Amended Case Management Order or 1/7/08, Doc. #31) However, in her response to the interrogatory seeking the identification of treating physicians, Plaintiff objected to the interrogatory and indicated that she had not determined which treating physician she would call at trial. (Def. Exh. P, Second Interrogatory Answers) The fact that Plaintiff failed to comply with this Court's Case Management Order pertaining to discovery prejudiced Defendant "because it did not have an opportunity to discover the opinion or to rebut it." Id. Thus, the undersigned will not consider this

9

evidence.[2]

Plaintiff states in her Memorandum in Opposition to Defendant's Motion for Summary Judgment that she produced numerous records from numerous doctors and that Plaintiff will testify regarding the debilitating impact of her conditions. However, in response to a well-supported motion for summary judgment, the non-moving party may not rest on the allegations in its pleadings, but by **affidavit and other evidence** must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e) (emphasis added). Although Plaintiff submitted portions of her deposition transcript, Plaintiff's own, self-serving deposition testimony is insufficient to defeat Defendant's motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

Therefore, the undersigned finds that Plaintiff is unable to establish a prima facie case of disability discrimination under the ADA because she cannot demonstrate that she is disabled under the statute. Plaintiff's inability to establish that she is disabled is fatal to her discrimination claims under both theories of disability discrimination.[3] The failure of an employer to make reasonable accommodation is a separate form of prohibited discrimination under the ADA. Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 870 (8th Cir. 2008). However, to recover on a theory

---

[2] Even if the letter was admissible, the report does not address whether Plaintiff is unable to perform the variety of tasks central to most people's daily lives. Therefore, the evidence would be insufficient to demonstrate that Plaintiff had a substantial limitation in the ability to perform manual tasks. Further, "submitting evidence of a medical diagnosis with nothing more is insufficient to meet the definition of 'disability.'" Gage v. Potter, No. 4:06CV1587 FRB, 2008 WL 4332202, at *8 (E.D. Mo. Sept. 17, 2008) (citation omitted).

[3] Because the Plaintiff has not shown that she is disabled under the ADA and thus cannot support a failure to accommodate claim, the undersigned need not determine whether she exhausted her administrative remedies before filing her Complaint in federal court.

of either failure to accommodate or a theory of disability discrimination, the plaintiff must demonstrate that he or she is a person with a disability as defined by the ADA. Stevenson v. Best Buy Corp., No. 4:03CV01188, 2005 WL 3434770, at *7 (E.D. Mo. Dec. 14, 2005). Because Plaintiff has failed to establish that she has a disability, she cannot make a prima facie case of discrimination, and Defendant is entitled to summary judgment on Plaintiff's disability discrimination and failure to accommodate claims. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) ("Summary judgment is appropriate in a disability discrimination case if a plaintiff cannot make an evidentiary showing to support each element of a prima facie case.").

## Discrimination under Title VII

Plaintiff asserts that Defendant discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. Defendant, on the other hand, argues that Plaintiff is unable to establish a prima facie case of discrimination based on race. Therefore, Defendant maintains that it is entitled to summary judgment. The undersigned finds that Plaintiff cannot demonstrate a prima facie case of racial discrimination.

To establish a prima facie case of discrimination on the basis of race, a plaintiff must show: "(1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently." Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (citation omitted). The burden-shifting framework of McDonnell Douglas applies to claims of race discrimination. Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). Defendant argues that Plaintiff is unable to prove that she was meeting the legitimate expectations of her employer or that similarly situated white employees were treated differently.

11

Plaintiff, an African-American female, was a member of a protected group. Likewise, she suffered an adverse employment action when Defendant terminated her employment. With regard to meeting the legitimate expectations of her employer, Plaintiff maintains that she received favorable job performance evaluations, multiple pay raises, and additional job responsibilities prior to her termination. Plaintiff asserts that this evidence demonstrates that she performed her job satisfactorily. Defendant, on the other hand, argues that Plaintiff's excessive tardiness, which violated Defendant's attendance policy, demonstrates that Plaintiff was not meeting Defendant's legitimate job expectations.

The undersigned agrees that Plaintiff is unable to show that she was meeting the expectations of her employer at the time of her termination. The standard for assessing performance "'is not that of the ideal employee, but rather what the employer could legitimately expect.'" Calder, 298 F.3d at 729 (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 920 (8th Cir. 1999)). However, the mere fact that an employee meets some expectations does not mean that she meets her employer's legitimate expectations where she does not meet other, significant requirements. Id.

Plaintiff does not contest the fact that she was excessively tardy during her employment with the Defendant.[4] Plaintiff was tardy 174 times in less than 14 months. Plaintiff received numerous verbal and written warnings, a suspension, and placement in the performance improvement plan. The Performance Improvement Plan Memorandum noted that, "[t]his action plan has been developed to define your performance improvement objectives and establish goals **necessary for you to achieve a satisfactory level of performance**." (Def. Exh. J) (emphasis added) Contrary to Plaintiff's

---

[4] Plaintiff's reliance on disability cases is misplaced. First, the factors for a prima facie racial discrimination case are different than the factors in a disability discrimination claim. Second, Plaintiff has failed to establish that she is disabled, rendering those cases inapposite.

12

assertion, she was not performing her job satisfactorily.

Further, Defendant correctly points out that Plaintiff's inability to be present during the requisite working hours renders her unable to show she was qualified for the job. Williams v. RIGHTChoice Managed Care, Inc., No. 4:07CV01419 ERW, 2008 WL 681695, at *5 (E.D. Mo. March 7, 2008). "[R]egular and reliable attendance is a necessary element of most jobs." Nesser v. Trans World Airlines, Inc., 160 F.3d 442, 445 (8th Cir. 1998). Certainly, in this case, Defendant required its employees to be on time in a regular and reliable manner. (Employee Warning Report, Def. Exh. H) However, Plaintiff was tardy more often than she was on time, including an 8-week time period during which she was never on time. Thus, the undersigned finds that Plaintiff is unable to make a prima facie case of racial discrimination because she cannot demonstrate that she was meeting her employer's legitimate job expectations.

Even if Plaintiff could show that her work performance met Defendant's expectations, she is unable to demonstrate that Defendant treated differently those similarly situated employees who were not members of the protected group. "Plaintiff must show that she and other employees were 'similarly situated in all relevant respects and yet she received a more severe punishment for committing substantially the same offense.'" Johnson v. Potter, No. 4:04CV1233DDN, 2006 WL 2129796, at *5 (E.D. Mo. July 31, 2006) (quoting Russell v. TG Missouri Corp., 340 F.3d 735, 745 (8th Cir. 2003)). To demonstrate that an employee is similarly situated, "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000) (citation omitted).

Plaintiff has failed to identify a single, similarly situated employee for the basis of comparison.

While some employees may have been tardy occasionally, Ms. Levora testified that no other employee accrued nearly as many tardies, or received as many chances, as Plaintiff. (Levora Decl., Def. Exh. B, ¶ 21) As Defendant aptly states, "Plaintiff's 174 tardies place her in a league of her own, such that no other CPS employee could be considered similarly situated." (Def. Memo. in Support, p. 21); see also Clark, 218 F.3d at 918 (plaintiff's history of violence and threats rendered her unique and not similarly situated to the plaintiff); Bailey v. Amsted Indus. Inc., 172 F.3d 1041, 1045 (8th Cir. 1999) (plaintiff failed to show that there were other workers who had large numbers of absences but were not discharged). Because Plaintiff is unable to demonstrate that similarly situated employees, who were not part of the protected group, were treated more favorably, she cannot meet her burden of proving a prima facie case of racial discrimination. Thus, Defendant is entitled to summary judgment. Cohen v. Renaissance Grand Hotel, No. 4:06CV00401-ERW, 2007 WL 2080385, at *5 (E.D. Mo. July 16, 2007).

### Discrimination under the Age Discrimination in Employment Act (ADEA)

To prevail on an age discrimination case, the Plaintiff has the burden of establishing a prima facie case of discrimination. Riley v. Lance, Inc., 518 F.3d 996, 1000 (8th Cir. 2008) (citation omitted). A prima facie case of age discrimination under the ADEA requires Plaintiff to show: (1) that she was a member of the protected age group, over 40 years old, at the time of her termination; (2) she was performing her job at a level that met Defendant's legitimate expectations; (3) she was discharged by Defendant; and (4) Defendant subsequently hired a younger person to fill her position. Loeb v. Best Buy Co., Inc., 537 F.3d 867, 872 (8th Cir. 2008); Calder v. TCI Cablevision of Missouri, 298 F.3d 723, 729 (8th Cir. 2002). The burden-shifting analysis set forth in McDonnell Douglas also applies to cases of age discrimination. Breeding, 164 F.3d at 1156.

Plaintiff contends that she is able to meet her burden of demonstrating a prima facie case of age discrimination. The parties do not dispute that Plaintiff was an individual over the age of forty (40) years or that the Defendant discharged her. Defendant, however, asserts that Plaintiff cannot show that she was performing her job at a level that met Defendant's legitimate expectations, nor is she able to demonstrate that similarly situated employees outside of the protected class were treated more favorably.

The undersigned finds that Plaintiff is unable to establish a prima facie case of age discrimination and that summary judgment in favor of the Defendant is warranted. As previously stated above, Plaintiff is unable to show that she was meeting her employer's legitimate expectations. Her excessive tardiness rendered her unable to perform her job at a level that met Defendant's legitimate expectations. Even assuming that Plaintiff's job performance was acceptable, she has failed to even suggest, let alone demonstrate, that Defendant replaced her with a younger person. Because Plaintiff is unable to meet her burden, the Defendant is entitled to judgment as a matter of law on Plaintiff's claim of discrimination based on age. Cohen, 2007 WL 2080385, at *5.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. #33] is **GRANTED.** A separate Judgment shall accompany this Memorandum and Order.

                                                    /s/ Terry I. Adelman  
                                            UNITED STATES MAGISTRATE JUDGE

Dated this   26th   day of November, 2008.